IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION


UNITED STATES OF AMERICA,        )
                                 )      October 23, 2018
                                 )
        -versus-                 )      Greenville, SC
                                 )
BRANDON CORY LECROY,             )      8:18-480-1
                                 )
        Defendant.               )


TRANSCRIPT OF CHANGE OF PLEA

BEFORE THE HONORABLE BRUCE HOWE HENDRICKS
UNITED STATES DISTRICT JUDGE, presiding


A P P E A R A N C E S:

For the Government:   WILLIAM J. WATKINS, JR., AUSA
                      US Attorney's Office
                      55 Beattie Place, Ste. 700
                      Greenville, SC 29601


For the Defendant:    ERICA M. SODERDAHL, ESQ.
                      Federal Public Defender
                      75 Beattie Place, Ste. 950
                      Greenville, SC 29601


Court Reporter:       KAREN E. MARTIN, RMR, CRR
                      PO Box 835
                      Charleston, SC 29402


Proceedings reported by stenographic court reporter.
Transcript produced with computer-aided transcription
software.

2

1          Tuesday, October 23, 2018

2          (WHEREUPON, court was called to order at 1:22 p.m.)

3          THE COURT:  Thank you.  Take your seats, please.

4          Yes, sir, Mr. US Attorney?

5          MR. WATKINS:  Judge, we're here on 8:18-480,

6    this is United States vs. Lecroy.  He's present with his

7    attorney, Ms. Soderdahl.  And he is prepared,

8    Ms. Soderdahl tells me, to enter a plea to Count 2 of his

9    indictment pending.

10          THE COURT:  Okay.  Let's go ahead and swear in

11   the defendant.

12          THE CLERK:  May it please the Court, Your Honor?

13          Sir, would you raise your right hand to be

14   sworn.

15          (WHEREUPON, the defendant was sworn.)

16          THE DEFENDANT:  Yes, sir.

17          THE CLERK:  Thank you, sir.

18          THE COURT:  Is there a plea agreement in this

19   case?

20          MR. WATKINS:  No, ma'am, there is no written

21   plea agreement.  However, there is an understanding that

22   in exchange for him pleading guilty to Count 2, the first

23   count would be dismissed at sentencing if Your Honor would

24   accept that at sentencing.

25          THE COURT:  Okay.

1      Ms. Soderdahl, have you been able to communicate
2  with your client?
3          MS. SODERDAHL:  I have, Your Honor, yes.
4          THE COURT:  And have you explained to him the
5  charge or charges contained in the indictment and the
6  possible punishment and his constitutional rights,
7  including the right to a jury trial?
8          MS. SODERDAHL:  Yes, Your Honor.
9          THE COURT:  And in your opinion, does he
10  understand the charges, the punishment, and his rights?
11          MS. SODERDAHL:  I believe he does, yes.
12          THE COURT:  And how does he indicate he wishes
13  to plead?
14          MS. SODERDAHL:  Guilty, Your Honor.
15          THE COURT:  And do you agree with that decision
16  yourself?
17          MS. SODERDAHL:  I do, yes.
18          THE COURT:  From your own investigation of the
19  facts and circumstances of this case, do you feel that the
20  Government could produce sufficient evidence to convince a
21  jury of his guilt beyond a reasonable doubt, and that if
22  he were to stand trial, his conviction would be probable?
23          MS. SODERDAHL:  Yes, I do, Your Honor.
24          THE COURT:  Has he been ordered to submit to a
25  mental examination to determine his competency?

1    **MS. SODERDAHL:**  Yes, Your Honor.  He also was

2    the subject of a competency hearing where he was found

3    competent to stand trial.

4         **THE COURT:**  Okay.  Do you have any doubt as to

5    his competence to plead at this time?

6         **MS. SODERDAHL:**  At this time, Your Honor, I do

7    not.

8         **THE COURT:**  Okay.

9         All right.  Mr. Lecroy, you're now under oath.

10   And if you answer any of my questions falsely, your

11   answers could later be used against you in another

12   prosecution for perjury or making a false statement.  Do

13   you understand?

14        **THE DEFENDANT:**  Yes, Your Honor.

15        **THE COURT:**  Okay.  And I've been informed that

16   you wish to plead guilty; is that correct?

17        **THE DEFENDANT:**  Yes, Your Honor.

18        **THE COURT:**  And before I can accept your plea of

19   guilty, it's going to be necessary for me to make sure

20   that your plea is made freely and voluntarily.  So I'm

21   going to ask you some questions.  If you don't understand

22   the question, just let me know and I'll try to explain it

23   to you.  Or you can stop -- we can stop and you can talk

24   to your lawyer at any time about any matter if you want

25   to.  Do you understand that?

5

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Okay.  How old are you?

3          THE DEFENDANT:  I'm 26.

4          THE COURT:  Okay.  Where were you born?

5          THE DEFENDANT:  Anderson, South Carolina.

6          THE COURT:  And how far did you go in school?

7          THE DEFENDANT:  I had a special education and

8  completed 12 years.

9          THE COURT:  Okay.  What kind of jobs have you

10  had?

11          THE DEFENDANT:  I have not had a job.  I've been

12  on disability.

13          THE COURT:  Okay.

14          THE DEFENDANT:  I have went to vocational

15  school.

16          THE COURT:  Okay.  Have you ever been treated

17  for alcohol abuse, or drug abuse, or mental illness?

18          THE DEFENDANT:  No, Your Honor.

19          THE COURT:  Okay.

20          MS. SODERDAHL:  It's my understanding if I may,

21  Your Honor, that Mr. Lecroy, when he was a youth, when he

22  was I think in elementary school, I think he was treated

23  for maybe ADHD.  I don't have any records on that, but I

24  know that there's some indication that that did occur

25  many, many years ago.

1          THE COURT:  Okay.

2          Have you taken any kind of medicine or drugs or

3     alcohol in the last 24 hours?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  Okay.  What have you taken?

6          THE DEFENDANT:  Do you have that list?

7          MS. SODERDAHL:  Mr. Lecroy is currently

8     prescribed Prozac, which was a result of his mental health

9     evaluation.

10         THE COURT:  Does that affect your ability to

11    know and understand what you're doing here today?

12              THE DEFENDANT:  No, Your Honor.

13         THE COURT:  All right.  And are you aware of any

14    physical, emotional or nervous problem that might keep you

15    from understanding what you're doing here today?

16              THE DEFENDANT:  No, Your Honor.

17         THE COURT:  Do you understand that you're

18    pleading guilty?

19              THE DEFENDANT:  Yes, Your Honor.

20         THE COURT:  Okay.

21         And Ms. Soderdahl, again, do you believe that

22    your client knows and understands what he's doing?

23         MS. SODERDAHL:  I do believe that he does, yes,

24    Your Honor.

25         THE COURT:  Okay.  It appears to me that

7

1    Mr. Lecroy is competent to plead to the charges and I so
2    find for purposes of the record.
3                Are you satisfied with the manner in which
4    Ms. Soderdahl has represented you?
5                THE DEFENDANT:  Yes, Your Honor.
6                THE COURT:  Have you talked to her for as often
7    and as long as you felt it was necessary for her to
8    represent you?
9                THE DEFENDANT:  Yes, Your Honor.
10               THE COURT:  Do you need anymore time to talk to
11   her today?
12               THE DEFENDANT:  No, Your Honor.
13               THE COURT:  Have you understood all your
14   conversations with Ms. Soderdahl?
15               THE DEFENDANT:  Yes, Your Honor.
16               THE COURT:  Has she done everything for you that
17   you felt that she could have or should have done?
18               THE DEFENDANT:  Yes, Your Honor.
19               THE COURT:  Has she failed to do anything for
20   you that you've asked her to do?
21               THE DEFENDANT:  No, Your Honor.
22               THE COURT:  Is there anything that you wanted
23   her to do prior to today that she has not done?
24               THE DEFENDANT:  No, Your Honor.
25               THE COURT:  So are you completely satisfied with

1    Ms. Soderdahl's services?

2            THE DEFENDANT:  Yes, Your Honor.

3            THE COURT:  Do you have any complaint that you

4    want to make to the Court about your lawyer?

5            THE DEFENDANT:  No, Your Honor.

6            THE COURT:  Okay.  Under the constitution and

7    laws of the United States, you have a right to plead not

8    guilty.  If you plead not guilty, you're entitled to a

9    trial by a jury during which you'd have the right to the

10   assistance of Ms. Soderdahl on the charges contained in

11   the indictment.  Do you understand that?

12           THE DEFENDANT:  Yes, Your Honor.

13           THE COURT:  And if you were to go to trial,

14   you'd be presumed to be innocent.  And the Government

15   would be required to prove you guilty by competent

16   evidence and beyond a reasonable doubt before you could be

17   found guilty.  And you wouldn't have to prove that you

18   were innocent.  Do you understand?

19           THE DEFENDANT:  Yes, Your Honor.

20           THE COURT:  And in the course of a trial, the

21   witnesses for the prosecution, for the Government would

22   have to come into court and testify in your presence.  And

23   your lawyer could cross-examine those witnesses for the

24   Government, object to evidence offered by the Government,

25   and offer evidence on your behalf.  Do you understand?

1    **THE DEFENDANT:**  Yes, Your Honor.

2    **THE COURT:**  At a trial, while you'd have the

3    right to testify if you chose to do so, you'd also have

4    the right not to testify.  And no inference or suggestion

5    of guilt could be drawn from the fact that you did not

6    testify.  Do you understand?

7    **THE DEFENDANT:**  Yes, Your Honor.

8    **THE COURT:**  At a trial, you'd also have the

9    right to the issuance of subpoenas or compulsory process

10   to compel the attendance of witnesses to come into court

11   and testify for you in your defense.  Do you understand?

12   **THE DEFENDANT:**  Yes, Your Honor.

13   **THE COURT:**  If you plead guilty and I accept

14   your plea, you will waive your right to that jury trial

15   and the other rights I've discussed.  There won't be a

16   trial.  And I'll enter a judgment of guilty and sentence

17   you on the basis of your guilty plea after considering a

18   Presentence Report.  Do you understand?

19   **THE DEFENDANT:**  Yes, Your Honor.

20   **THE COURT:**  If you plead guilty and I accept

21   your plea, you'll also have to give up your right not to

22   incriminate yourself since I'll ask you questions about

23   what you did in order to satisfy myself that you're guilty

24   as charged.  Do you understand?

25   **THE DEFENDANT:**  Yes, Your Honor.

1        **THE COURT:** You may have given an incriminating

2  statement in this case. If you plead guilty, you will

3  waive or give up the right to contest or challenge whether

4  any such incriminating statement was freely and

5  voluntarily given in accordance with your constitutional

6  rights. Do you understand?

7        **THE DEFENDANT:** Yes, Your Honor.

8        **THE COURT:** You may have defenses to the charge

9  or the charges against you. Do you understand that if you

10  plead guilty that you waive or give up any defenses to the

11  charge?

12        **THE DEFENDANT:** Yes, Your Honor.

13        **THE COURT:** And if you plead guilty and I accept

14  your plea, you may be required to make restitution to any

15  victim or victims of your acts, either by payment of money

16  or in personal service as might be directed by this Court.

17  If restitution or personal service is ordered, any failure

18  to comply with that could be a basis for revoking any

19  period of supervision. Do you understand?

20        **THE DEFENDANT:** Yes, Your Honor.

21        **THE COURT:** If you're on probation or parole for

22  some other offense, do you understand that your probation

23  or parole could be revoked because of your guilty plea in

24  this case?

25        **THE DEFENDANT:** Yes, Your Honor.

1           THE COURT:  Do you understand that when you

2  plead guilty, you admit the truth of the charge that's

3  been made against you?

4           THE DEFENDANT:  Yes, Your Honor.

5           THE COURT:  And now that I've discussed your

6  rights with you, do you still want to plead guilty?

7           THE DEFENDANT:  Yes, Your Honor.

8           THE COURT:  The offense or offenses to which

9  you're pleading guilty are felony offenses.  If your plea

10  is accepted, you'll be adjudged guilty of that offense.

11  And such adjudication may deprive you of valuable civil

12  rights, such as the right to vote, the right to hold

13  public office, the right to sit on a jury, the right to

14  possess any kind of firearm, or even a single piece of

15  ammunition.  Do you understand?

16           THE DEFENDANT:  Yes, Your Honor.

17           THE COURT:  If the offense carries a maximum

18  sentence of 20 years or more, a probationary sentence is

19  unavailable under Title 18, United States Code, Section

20  3561(a)(1).  Do you understand?

21           THE DEFENDANT:  Yes, Your Honor.

22           THE COURT:  If it's applicable, you may be

23  required to forfeit certain property to the United States

24  Government.  Do you understand?

25           THE DEFENDANT:  Yes, Your Honor.

1    THE COURT:  If you plead guilty, then I have to

2   determine the appropriate sentence to be imposed.  And

3   under the Sentencing Reform Act of 1984, the US Sentencing

4   Commission issued guidelines for judges to follow in

5   sentencing cases, handling criminal case.  I'm required to

6   consider the statutory sentencing factors under 18 USC

7   3553(a) as well as the advisory sentencing guidelines.

8   Have you and Ms. Soderdahl talked about how those

9   statutory factors and the advisory guidelines might affect

10  your case?

11    THE DEFENDANT:  Yes, Your Honor.

12    THE COURT:  Your lawyer can only give you an

13  estimate of what your guideline range might be.  Do you

14  understand that the sentence I impose may be different

15  from any estimate that your lawyer may have given you?

16    THE DEFENDANT:  Yes, Your Honor.

17    THE COURT:  And I'm not going to be able to

18  determine that guideline sentence for your case until

19  after the Presentence Report has been done and you and the

20  Government both have had a chance to challenge the facts

21  that are contained in that Presentence Report.  Do you

22  understand?

23    THE DEFENDANT:  Yes, Your Honor.

24    THE COURT:  So your sentencing range can be

25  substantially affected by what's called relevant conduct.

1          Is relevant conduct an issue here?

2          **MS. SODERDAHL:**  It may be, Your Honor.

3          **MR. WATKINS:**  Judge, I think it would be proper

4    to give that charge, yes, ma'am.

5          **THE COURT:**  Okay.

6          Your sentencing range could be substantially

7    affected by what's called relevant conduct.  That means

8    you could be held accountable for criminal conduct in

9    which you were directly involved in preparation for,

10   during, or in the course of attempting to avoid

11   responsibility for the offense with which you've been

12   charged.  It also means that where you've been involved in

13   any jointly undertaken criminal activity with other people

14   or another person, you will be held accountable for the

15   conduct of others that was both in furtherance of your

16   jointly undertaken activity and reasonably foreseeable in

17   connection with that activity.  Do you understand that?

18         **THE DEFENDANT:**  Yes, Your Honor.

19         **THE COURT:**  Have you discussed the subject of

20   relevant conduct with Ms. Soderdahl?

21         **THE DEFENDANT:**  Yes, Your Honor.

22         **THE COURT:**  Ms. Soderdahl, did y'all talk about

23   that?

24         **MS. SODERDAHL:**  We did talk about that, yes.

25         **THE COURT:**  Okay.

1          All right.  So is the Government agreeing to

2    dismiss some counts?

3          **MR. WATKINS:**  Yes, ma'am.  It's our intention to

4    dismiss the first count of his indictment at sentencing.

5          **THE COURT:**  Okay.

6          So even if the Government has agreed to dismiss

7    some counts of your indictment, your relevant conduct

8    could include conduct alleged in counts of the indictment

9    which will be dismissed.  Do you understand?

10          **THE DEFENDANT:**  Yes, Your Honor.

11          **THE COURT:**  And after it's been determined what

12    guidelines do apply to your case, I've got the authority

13    in some circumstances to impose a sentence that's either

14    more severe or less severe than that called for by the

15    guidelines.  Do you understand?

16          **THE DEFENDANT:**  Yes, Your Honor.

17          **THE COURT:**  Now, under some circumstances, you

18    or the Government may have the right to appeal any

19    sentence I might impose.  Do you understand?

20          **THE DEFENDANT:**  Yes, Your Honor.

21          **THE COURT:**  Parole's been abolished.  And if

22    you're sentenced to prison you will not be released on

23    parole.  Do you understand?

24          **THE DEFENDANT:**  Yes, Your Honor.

25          **THE COURT:**  Now, under the provisions of the

1    Sentencing Reform Act, the Court may order a term of
2    supervised release to follow imprisonment in any case.
3    But the Court must order a term of supervised release
4    following imprisonment if a sentence of more than one year
5    is imposed or if it's required by statute.  Do you
6    understand?

7          **THE DEFENDANT:**  Yes, Your Honor.

8          **THE COURT:**  So when a person is placed on
9    supervised release, that person is restricted as to the
10   places he may go and the things he might do, and you must
11   report to the authorities on a regular basis.  Do you
12   understand?

13         **THE DEFENDANT:**  Yes, Your Honor.

14         **THE COURT:**  If you were to violate any term or
15   condition of that supervised release, you could be given
16   more time in jail.  Do you understand?

17         **THE DEFENDANT:**  Yes, Your Honor.

18         **THE COURT:**  So you've heard your lawyer tell me
19   that she's explained to you the charges against you, the
20   possible punishment, and your constitutional rights, and
21   that you understand all of these things.  Is that true?

22         **THE DEFENDANT:**  Yes, Your Honor.

23         **THE COURT:**  Do you understand what's going on
24   here today?

25         **THE DEFENDANT:**  Yes, Your Honor.

1          THE COURT:  And have you received a copy of the

2   indictment?

3          THE DEFENDANT:  Yes, Your Honor, I have it right

4   here.

5          THE COURT:  Okay.  You've got it right there?

6   Have you read it?

7          THE DEFENDANT:  Yes, ma'am.

8          THE COURT:  Okay.  Have you gone over it with

9   Ms. Soderdahl?

10         THE DEFENDANT:  Yes, ma'am.

11         THE COURT:  And the case in general?

12         THE DEFENDANT:  Yes, ma'am.

13         THE COURT:  Have you told her everything about

14   your case?

15         THE DEFENDANT:  Yes, ma'am.

16         THE COURT:  Okay.

17         I'd ask Mr. US Attorney to please summarize that

18   indictment and give us the elements and the penalties.

19         MR. WATKINS:  May it please the Court, Your

20   Honor?  Mr. Lecroy is offering to plead guilty to Count 2

21   of his indictment, which charges murder for hire.  It

22   states that between March 19 and April 9, all of this

23   year, in the District of South Carolina and elsewhere,

24   Mr. Lecroy did cause another to travel in interstate

25   commerce, did use and cause the use of a facility of

1    interstate commerce; that is, communication by cellar

2    telephone, with the intent that murder be committed in

3    violation of the laws of the State of South Carolina as

4    consideration for the receipt of or a promise or agreement

5    to pay anything of pecuniary value.

6            Your Honor, the elements the Government would

7    have to prove if this case went to trial are as follows.

8    One, that Mr. Lecroy did with the intent that a murder be

9    committed in violation of the laws of any state or the

10   United States; two, that Mr. Lecroy did as consideration

11   for the receipt of or consideration for a promise or

12   agreement to pay anything of pecuniary value, did cause

13   another individual to travel in interstate commerce or

14   Mr. Lecroy used a facility of interstate commerce

15   connected with the offense.

16           The maximum penalty that he could face would be

17   a fine of $250,000, imprisonment for ten years, supervised

18   release of three years, and a special assessment fee of

19   $100.

20           **THE COURT:**  Okay.

21           Mr. Lecroy, do you understand the nature of the

22   charge and the range of possible penalties should you be

23   convicted?

24           **THE DEFENDANT:**  Yes, Your Honor.

25           **THE COURT:**  All right.

18

1              And was there a mandatory minimum in there?

2              **MR. WATKINS:**  No, ma'am, there's not a mandatory

3      minimum.

4              **THE COURT:**  Do you still want to plead guilty?

5              **THE DEFENDANT:**  Yes, Your Honor.

6              **THE COURT:**  Did you commit this offense?

7              **THE DEFENDANT:**  Yes, Your Honor.

8              **THE COURT:**  Okay.  I find that the defendant

9      fully comprehends and understands the nature of the charge

10     against him and generally what elements the Government

11     would have to prove if a trial were held.  There's not

12     been a plea agreement, but there's an understanding about

13     the dismissal of a count at sentencing.

14             Do you understand that if I don't accept that

15     dismissal, you won't be able to withdraw your guilty plea?

16     Do you understand that?

17             **THE DEFENDANT:**  Yes, Your Honor.

18             **THE COURT:**  Has anyone promised you what

19     sentence you will receive?

20             **THE DEFENDANT:**  No, Your Honor.

21             **THE COURT:**  And do you still want to plead

22     guilty?

23             **THE DEFENDANT:**  Yes, Your Honor.

24             **THE COURT:**  Has anyone held out any hope of a

25     reward to get you to plead guilty?

1          **THE DEFENDANT:**  No, Your Honor.

2          **THE COURT:**  Has anyone threatened you or

3    pressured you or used force to get you to plead guilty?

4          **THE DEFENDANT:**  No, Your Honor.

5          **THE COURT:**  Have you had enough time to decide

6    whether you do want to plead guilty?

7          **THE DEFENDANT:**  Yes, Your Honor.

8          **THE COURT:**  Are you pleading guilty of your own

9    free will and accord?

10         **THE DEFENDANT:**  Yes, Your Honor.

11         **THE COURT:**  Okay.

12         Mr. US Attorney?

13         **MR. WATKINS:**  Your Honor, may it please the

14   Court?  As a factual basis for the plea, Your Honor,

15   between on or about March 19, 2018, and April 9, 2018,

16   Mr. Lecroy sought to hire a hitman to kill his neighbor,

17   known as FJ, Foxtrot-Juliet.  Lecroy contacted an

18   extremist organization and was referred to an FBI

19   undercover employee, hereafter referred to as UCE.  This

20   first contact was a phone call from the District of South

21   Carolina to the extremist organization in Alabama.

22         Your Honor, on March 20th, 2018, via a recorded

23   telephone conversation, Mr. Lecroy made an arrangement

24   with the UCE to pay for the murder of his neighbor, FJ.

25   During the phone call, Lecroy told the UCE, quote, $500

1    and he's a ghost, end quote.  In other words, Lecroy

2    offered to pay $500 to procure the death of FJ.

3    Mr. Lecroy also makes a request to put a flaming cross in

4    the front yard and to hang his neighbor from a tree.

5            At the time of the call, the UCE was located in

6    Virginia and so informed Lecroy.  Therefore this call by

7    means of cellar telephone was between Mr. Lecroy in the

8    District of South Carolina and the UCE in Virginia.

9            Your Honor, on March 22nd, 2018, via a recorded

10   conversation, Mr. Lecroy reaffirms the agreement

11   previously made with the UCE.  He also provides a UCE with

12   further intelligence on when to best commit the murder as

13   well as explains his plans to take over the victim's

14   property once the murder is executed.

15           Your Honor, on April 9, 2018, the UCE traveled

16   to Greenwood, South Carolina, in a plan to meet with

17   Lecroy as per their previous conversations.  Pursuant to

18   their previous agreement, the UCE traveled in interstate

19   commerce.  During this meeting, Mr. Lecroy pointed out to

20   the UCE FJ's residence and discussed possible future

21   targets that he could use the UCE's services for.

22   Mr. Lecroy also provided the UCE with a $100 cash down

23   payment with the acknowledgment that this payment was for

24   the murder of his neighbor.

25           Your Honor, after this exchange of funds,

1    Mr. Lecroy was arrested.  FBI agents and state and local

2    law enforcements descended on the scene and took him into

3    custody.

4           Your Honor, he was eventually given his Miranda

5    warnings and he agreed to talk with state and local

6    officials.  And he admitted to them that he had hired

7    someone he believed to be a hitman to kill FJ.

8           THE COURT:  Okay.

9           All right.  Do you agree with the prosecutor's

10   summary of what you did?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  Do you have any questions that you

13   want to ask him before we go on?

14          THE DEFENDANT:  No, Your Honor.

15          THE COURT:  Have you understood all my

16   questions?

17          THE DEFENDANT:  Yes, Your Honor.

18          THE COURT:  Is there anything you want to ask me

19   before we go on?

20          THE DEFENDANT:  No, Your Honor.

21          THE COURT:  How do you wish to plead?

22          THE DEFENDANT:  Guilty.

23          THE COURT:  Are you guilty?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  Okay.

1          It's the finding of the Court in the case of

2    Brandon Lecroy that the defendant is fully competent and

3    capable of entering an informed plea.  His plea of guilty

4    is a knowing and voluntary plea supported by an

5    independent basis in fact and containing each of the

6    essential elements of the offense.  He is now adjudged

7    guilty of that offense.

8          So a written Presentence Report is going to be

9    prepared by the US Probation Office.  And you're going to

10   be asked to give information for that report which will be

11   used to assist me at sentencing.  And your lawyer can be

12   present during any questioning by the probation office.

13   You and Ms. Soderdahl will be able to read that

14   Presentence Report and file any objections to that report

15   prior to the sentencing hearing.  And you'll also have the

16   chance to speak on your own behalf.  So you'll be referred

17   on now to the probation office to get that report done.

18          **THE DEFENDANT**:  Okay.  Thank you.  I would wish

19   that Ms. Soderdahl, my attorney, would be present during

20   that meeting.

21          **THE COURT**:  Okay.  She heard you say that.  She

22   will be.

23          (WHEREUPON, the defendant signed his plea.)

24

25

1          ***

2    I certify that the foregoing is a correct transcript from

3    the record of proceedings in the above-entitled matter.

4        s/Karen E. Martin                    7/1/2019
     _____        _____
5    Karen E. Martin, RMR, CRR           Date

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25